E-FILED
Friday, 26 August, 2011  10:36:57 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| LARRY G. BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 11-3333 |
| ) | |
| CARGILL MEAT SOLUTIONS ) | **JURY DEMAND** |
| CORPORATION, A Delaware Corporation, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, LARRY G. BROOKS, by and through his attorney, BRUCE C. BEAL of CLAUDON, KOST, BEAL, WALTERS & LANE, LTD., and complaining of Defendant, CARGILL MEAT SOLUTIONS CORPORATION, a Delaware Corporation, states as follows:

### I.
### JURISDICTION & VENUE

1. Jurisdiction to hear Plaintiff's claims under the American's with Disabilities Act of 1990, 42 U.S.C. §12101, *et. seq.* ("ADA"), is founded under 28 U.S.C. §1331.

2. Plaintiff is a resident of Smithfield, Illinois, Fulton County, Illinois and was employed at Defendant's Beardstown, Illinois plant located in Schuyler County, Illinois.

3. Defendant, Cargill Meat Solutions Corporation, is a Delaware corporation registered as a foreign corporation in the State of Illinois doing business in Beardstown, Illinois, and the claim arose in Schuyler County, Illinois.

4. Venue in this Court exists under 28 U.S.C. §1391(b). This case is assigned to the Springfield Division of this Court under Local Rule 40.1.

5. The occurrence complained of occurred on the 18th of May, 2010 and 1st of June, 2010 in the City of Beardstown, County of Schuyler, and State of Illinois.

## II.
## THE PARTIES

6. Plaintiff, Larry G. Brooks, is a 54 year old male who was employed for approximately 23 years as a hourly employee/boner and yard supervisor and hog buyer at the Cargill Meat Solutions Corporation plant located at Beardstown, Schuyler County, Illinois.

7. Defendant, Cargill Meat Solutions Corporation, is a Delaware corporation registered as a foreign corporation in the State of Illinois doing business in Beardstown, Schuyler County, Illinois.

8. Defendant is an employer and covered entity pursuant to 42 U.S.C. 12111(2), (5)(A). Defendant is in the business of hog buying, meat processing and meat packing.

## III.
## GENERAL ALLEGATIONS

9. Plaintiff was hired by Defendant at its Beardstown plant on June 8, 1987 and began his employment with Defendant as a boner.

10. Plaintiff through his 23 years of service with Defendant eventually obtained the title of yard supervisor and hog buyer through his employment with Defendant.

11. That in approximately 1995 Plaintiff suffered severe injuries from an automobile accident unrelated to his employment with Defendant and required a total hip replacement.

12. Plaintiff returned to work with Defendant while he was not fully recovered from his injuries and utilized crutches so that he could undertake the essential functions of his employment and remain mobile.

13. Plaintiff has had pain, mobility issues, arthritis, and other complications stemming from his hip replacement upon his return to work.

14. That Defendant through its supervisors, agents and Plaintiff's co-workers were well aware of Plaintiff's automobile accident, mobility issues, pain, arthritis, and other complications stemming from his hip replacement and were aware that the pain, mobility issues, arthritis, and other complications were present while he was undertaking the essential functions of his employment.

15. Part of Plaintiff's job duties included providing Trucker Quality Assurance (TQA) examinations to the semi-drivers that delivered the hogs to the plant for processing and packing.

16. That the TQA examinations were open book examinations and each respective semi-driver could not continue to deliver hogs to the plant unless they had successfully passed the examinations.

17. Plaintiff's hip had a life expectancy of approximately 15 years and had reached its life span. The hip was causing Plaintiff great pain starting in April, 2010 and continued to the point the he felt it necessary to seek a medical opinion on how to correct the condition.

18. Plaintiff was experiencing additional pain in his left hand that radiated up through his left arm and into his back from what he believed to be a metal sliver that he believed he had received through his employment into his left thumb.

19. Plaintiff's hip pain in May, 2010 had become excruciating and so severe he could not withstand it anymore while performing his duties and knew he must seek medical attention for the condition which was causing him to take time off of work.

20. Plaintiff intended to seek a medical opinion for the treatment of his pain in his left hand and arm which caused additional complications in performing his work duties.

21. On or about May 15, 2010 Plaintiff informed his supervisor, Bob Grier, that he "was going to have a few things looked at" after a time period when vacation use by other employees was not so high so as not to disrupt the production of Defendant and was going to require time off from work to deal with those matters.

22. Defendant's employee and Plaintiff's supervisor, Bob Grier, immediately responded to Plaintiff's statement by stating that Plaintiff had not gotten a nurses excuse indicating Plaintiff "did anything" disputing that Plaintiff had been injured at work or had any type of work related incident requiring medical treatment or time off based upon a work related injury.

23. Plaintiff informed his supervisor that in fact he did not have a nurses excuse for any work related injury and conveyed to his supervisor that he was going to seek medical treatment for his hip condition and left thumb condition and wanted to allow the Defendant to be able to plan accordingly for his planned future absence.

24. On May 18, 2010 Plaintiff was suspended from his position due to a claim made by Defendant's employee and Plaintiff's supervisor, Bob Grier, that he falsified a TQA examination for an independent semi-driver who delivered hogs to the Beardstown, Illinois plant by providing the driver answers to the questions.

25. The open book multiple choice examination in question was administered to the semi-driver some time in May, 2010 but was not discussed until Plaintiff's requested accommodation for time off for work for medical treatment.

26. Additionally, Plaintiff followed the same protocol in providing the test in question as is always followed and did not provide any answers to the driver in question.

27.    On or about June 1, 2010 Plaintiff was terminated from his position based upon the claims of providing the semi-driver answers to the open book multiple choice examination questions.

## IV.
## PLAINTIFF'S CLAIMS
## STATUTORY PROVISIONS
## CLAIM 1

28.    At all times material there was in full force and effect in the United States of America the following provision of the ADA of 1990, which provided:

American's with Disabilities Act of 1990, 42 U.S.C. §12112

(a) General rule
No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

29.    Plaintiff was disabled as defined by the ADA, Section §12102 as he had a physical impairment related to his hip that substantially limited one or more of his major life activities of walking, standing, and being mobile.

30.    He additionally had a physical impairment related to his hip that substantially limited his major life activity to undertake his job duties and work.

31.    Plaintiff was an individual qualified to perform the essential functions of his job with a reasonable accommodation of time off from work for recovery time after the necessary medical treatment for his hip condition.

32.    Plaintiff suffered an adverse employment decision by being suspended and terminated due to his hip condition.

33.    Defendant's reason for termination based upon the open book multiple choice examination taken by the semi-driver was merely pre-textual.

# V.
# PLAINTIFF'S CLAIMS
# STATUTORY PROVISIONS
# CLAIM 2

34. At all times material there was in full force and effect in the United States of America the following provision of the ADA of 1990, which provided:

> American's with Disabilities Act of 1990, 42 U.S.C. §12112, 42 U.S.C. §12102(1)(A-C), 42 U.S.C. §12102(3)(A)(B)
>
> (a) General rule
> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
>
> ********
>
> (1) Disability
>
> The term "disability" means, with respect to an individual—
> **(A)** a physical or mental impairment that substantially limits one or more major life activities of such individual;
> **(B)** a record of such an impairment; or
> **(C)** being regarded as having such an impairment (as described in paragraph (3)).
>
> ********
>
> (3) Regarded as having such an impairment
>
> For purposes of paragraph (1)(C):
>
> **(A)** An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>
> **(B)** Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

35. Plaintiff was regarded as disabled by Defendant as defined by the ADA, Section §12102(3)(A)(B) as Plaintiff's supervisor, Bob Grier, perceived Plaintiff's complaints pertaining

to his hip condition and request for accommodation through the use of time off from work as a disability which substantially limited one or more of his major life activities of walking, standing, and being mobile.

36. Plaintiff was an individual qualified to perform the essential functions of his job with a reasonable accommodation of time off from work for recovery time after the necessary medical treatment for his hip condition.

37. Plaintiff suffered an adverse employment decision by being suspended and terminated due to his perceived disability with his hip condition.

38. Defendant's reason for termination based upon the open book multiple choice examination taken by the semi-driver was merely pre-textual.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, LARRY G. BROOKS, prays for judgment in his favor in the following particulars:

a. Compensatory damages against Defendant in an amount exclusive of costs and interest that Plaintiff is found to be entitled;

b. Punitive damages against Defendant in an amount exclusive of costs and interest that Plaintiff is found to be entitled;

c. An order enjoining/restraining Defendant from further acts of discrimination;

d. In the alternative, an order placing Plaintiff in the position that he would have been if no violation of his rights occurred;

e. An award of interest, costs and reasonable attorney's fees;

f. Any and all other remedies provided pursuant to the ADA; and

g. Such other further relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                                          Respectfully Submitted,

                                          LARRY G. BROOKS, Plaintiff

                                          By:    /s/ Bruce C. Beal
                                                   Bruce C. Beal of
                                                   Claudon, Kost, Beal, Walters & Lane, Ltd.

Bruce C. Beal
Curtis S. Lane
Claudon, Kost, Beal, Walters & Lane, Ltd.
Attorneys for Defendant
121 W. Elm Street
P.O. Box 400
Canton, IL 61520
Telephone: (309) 647-6300
Fax: (309) 647-0022
E-mail: bcb7007@ckbbw.com
curtis.lane@sbcglobal.net